Baxter Motors, Inc., Plaintiff-Appellee, v. Iowa Hardware Mutual Insurance Company, Defendant-Appellant.

## Gen. No. 10,134.

Third District.

January 2, 1958.

Released for publication January 20, 1958.

Inghram & Dittmeyer, of Quincy, for defendant-appellant.

Penick, Wooleyhan & Nielson, of Quincy, for plaintiff-appellee.

JUDGE ROETH delivered the opinion of the court.

This case presents a question which has not been heretofore passed upon by the courts of review of Illinois. It involves the construction to be given to an exclusion clause of a policy of insurance issued by defendant to plaintiff, a car dealer, insuring plaintiff against loss of plaintiff's automobiles by theft, larceny, robbery, etc.

The clause in question provides:

"EXCLUSIONS   The policy does not apply:

. . . . .

(d)   Under any Coverage—to loss resulting from either the Insured voluntarily parting with title and possession of any automobile if induced so to do by any fraudulent scheme, trick, device, false pretense, or from Embezzlement, Conversion, Secretion, Theft, Larceny, Robbery or Pilferage committed by any person including any employee, entrusted by the Insured with either custody or possession of the automobile."

The facts giving rise to this controversy are not in dispute. On Saturday, May 5, 1956, a person who represented his name to be "Glenn Penn" appeared at plaintiff's used car lot and, after trying out a 1950 Chevrolet automobile, the said Penn agreed to buy the car. After a bill of sale had been prepared, Penn advised plaintiff that he would have the money to pay for it on the following Monday. Plaintiff agreed to hold the car until the following Monday but Penn then requested that he be allowed to take the car at that time for he wanted to drive it to La Grange, Missouri, the following day. When plaintiff would not allow Penn to have

525

the car, Penn produced a notarized letter which stated that he was having money transferred by Western Union from a bank in Texas to a bank in Quincy, Illinois. Plaintiff then attached dealer's license plates to the car and handed said Penn the keys to the car and allowed Penn to drive the car away from plaintiff's premises with the understanding that said Penn would return with the car the following Monday and pay for it. Plaintiff retained the bill of sale. Neither Penn nor the automobile have since been found. Plaintiff sued defendant on the insurance policy. Defendant by appropriate pleadings contended that the exclusion clause above, prevented recovery under the factual situation as outlined. The trial court found for the plaintiff and entered judgment for $500, the value of the car. This appeal followed.

It is conceded that the Exclusions Clause 6 (d) excludes two types of losses:

"(1) Loss resulting from the Insured voluntarily parting with title and possession of any automobile, if induced so to do by any fraudulent scheme, trick, device, false pretense; and

"(2) Loss resulting from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person including any employee, entrusted by the Insured with either custody or possession of the automobile."

██ ██ Plaintiff contends that since it did not part with title to the car, but only parted with possession thereof, the first part of the exclusion clause does not apply and therefore plaintiff is not barred from a recovery by these provisions. No contention to the contrary is made by defendant and we concur in this initial premise. Plaintiff then argues that there is no provision in the exclusion clause covering a situation where the insured is induced to part with possession *only,* through a fraudulent scheme or false pretense

526

and that the second part of the exclusion clause is not applicable to such a situation. Under the factual situation before us we cannot agree with this contention.

This particular exclusion clause has been construed in only three cases, so far as the search of counsel reveals. In each of the three cases cited, the clause was identical with that in the case at bar and the factual situation in each case was comparable.

In Hanover Fire Ins. Co. of New York v. J. H. Scroggs, 92 Ga. App. 548, 88 S.E.2d 703, the plaintiff, an automobile dealer, had a sales manager in charge of the selling of cars. The manager attempted to sell the automobile in question to a person whom he supposed was a prospective purchaser. He permitted the prospective purchaser to drive the car from the premises thinking that he was trying it out. The car was never returned and was later found in New York, completely wrecked. In holding that the exclusion clause prevented recovery on the policy, the court said:

"By allowing the driver to leave the lot with the car for the purpose, as he supposed, of trying it out, he entrusted him with the custody of the vehicle for this purpose. Accordingly, the facts of the case fall squarely within the exclusion clause to the effect that the loss is one excluded from the terms of the policy as being a conversion by a person entrusted with the custody of the vehicle."

In Pacific Indemnity Co. v. Harrison, 48 A.L.R.2d 95 (Texas), 277 S.W.2d 256, plaintiffs were automobile dealers. A stranger giving his name as J. E. Davis came to their place of business and asked to be shown some used cars with a view of purchase. He represented himself as newly from Georgia. He gave a local address and name of employer. He decided, after a trial run, to buy a 1949 four-door Buick Super, then owned by plaintiffs and on the premises for sale. Davis thereupon signed the required tax affidavit and ap-

527

plication for Texas Certificate of Title, giving a check upon a local bank in payment. The car was then turned over to him with instructions to return the next morning for papers transferring the title. The salesman at the time called appellees' insurance agency and secured a binder covering the transaction. Davis did not return for the further papers, having no account at the named bank, and his statements as to employment and residence were found to be false. He disappeared in fact with plaintiffs' car and efforts to locate him through police channels and otherwise were without avail. In reversing the judgment in favor of the automobile dealer the court said:

"They had the thief's promise to return the next day to complete execution of the papers necessary to effect transfer of title and to make final arrangements about insurance coverage. Meantime appellees, as I see it, entrusted possession of the car of which they were still the owners to the thief in reliance upon his promise. The thief betrayed the trust. He did not return the next day. He has not been located or heard from since he obtained the car. He kept the car, which he obtained by inducing appellees to trust him with possession during the interim that must necessarily transpire before the deal could be consummated the next day." . . .

"Here, as I see it, the facts constitute a 'conversion, secretion, (or) theft' committed by a person 'entrusted by the insured with either custody or possession of the automobile.' Since such a situation expressly excludes coverage under the express terms of the policy, I think the judgment of the trial court should be reversed and judgment rendered that appellees take nothing."

In Grady Motors Corp. v. Travelers Fire Ins. Co., 147 Fed. Supp. 290, plaintiff was a corporation engaged in the business of selling automobiles. It delivered a new 1956 Lincoln automobile to a person theretofore

528

unknown to it, who represented himself to be Dr. Percy Covington Powell, Jr. It was equipped with temporary license tags, and at the time of delivery, Powell was given a temporary registration card and a retail buyer's order signed by plaintiff's agent and Powell. Plaintiff received therefor a check drawn on a Bethesda bank by Powell, for the full purchase price of the automobile. Powell drove away in the automobile, and neither he nor the automobile could be found. The check was not honored, as Powell had no account with the bank. In holding that the exclusion clause prevented recovery the court said:

"It will be noted that the policy excludes from its coverage a loss resulting from a voluntary parting with title if induced by fraud; or a loss from theft by a person entrusted by plaintiff with custody or possession. It therefore excludes loss when title passes; and if it does not pass, it excludes loss by theft by a person entrusted with custody or possession. The comprehensiveness of this provision therefore eliminates the necessity for a decision on the question of whether or not title passed in this instance. If it did pass, defendant is not liable; and if it did not pass, of necessity the possession of the automobile was entrusted to Powell, who in that case obtained it by larceny by trick, and defendant is not liable. In other words, it seems clear that the policy excludes from its coverage any loss by theft of the kind here involved, and by the breadth of the language employed, excludes liability for losses of the 'confidence man' variety, as they are sometimes colloquially described."

Thus three courts have arrived at the same conclusion under comparable facts. We are impressed with the holdings in these cases and are of the opinion that a like holding should be the holding of this court.

There is no ambiguity in the clause. Penn was none the less entrusted with custody or possession where that custody or possession was obtained by false pre-

529

tense. The loss occurred as a result of theft, larceny or conversion by Penn and his act is none the less a theft, larceny or conversion albeit possession or custody was obtained by false pretense. The fact that the element of fraud exists does not eliminate the application of the second part of the exclusion clause.

The finding and judgment in this case should have been for the defendant. Accordingly the judgment of the Circuit Court of Adams county will be reversed.

Reversed.

CARROLL, P. J. and REYNOLDS, J., concur.